# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 26-1941

UNITED STATES OF AMERICA,
          *Petitioner-Appellee*,

v.

DELAWARE DEPARTMENT OF LABOR,
          *Respondent-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF DELAWARE
(Miscellaneous Action No. 25-mc-322-CFC)

**Emergency Motion for Stay Pending Appeal**

JENNIFER KATE AARONSON
IAN LISTON
 *Deputy Attorneys General*

Delaware Department of Justice
State Office Building
820 North French Street
Wilmington, Delaware 19801
302.683.8875
Jennifer.Aaronson@delaware.gov
Ian.Liston@delaware.gov

*Attorneys for Respondent-Appellant Delaware Department of Labor*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................3

ARGUMENT.........................................................................................................9

    I.     THE STATE HAS A SIGNIFICANT LIKELIHOOD OF
PREVAILING ON APPEAL..................................................................11

        A.  Delaware Law Requiring Confidential Treatment of
Unemployment Compensation Information Is Not
Preempted. ...................................................................................11

    II.    THE EQUITIES COMPEL A STAY. ...............................................16

        A. Appellant Will Suffer Irreparable Injury Absent A Stay ....16

        B. A Stay Would Not Substantially Harm Appellant, And
Would Further the Public Interest By Preserving the
Confidential Information of Third Parties Pending Appeal
...................................................................................................17

CONCLUSION ...................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Cal. Dep't of Human Res. Dev. v. Java*, 402 U.S. 121 (1971) ................................3

*Chao v. Cmty. Trust Co.*, 474 F.3d 75 (3d Cir. 2007) ............................................16

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ..............................15

*Custin v. Wirths*, 850 F. App'x 147 (3d Cir. 2021) ................................................3

*EEOC v. Franklin & Marshall Coll.*, 775 F.2d 110 (3d Cir. 1985) .........................3

*EEOC v. University of Pa.*, 850 F.2d 969 (3d Cir. 1988) .......................................10

*EEOC v. University of Pa.*, No. 2:25-cv-06502 (E.D. Pa. Apr. 27, 2026) ...... 10, 16

*Eng. v. Gen. Elec. Co.*, 496 U.S. 72 (1990) .........................................................15

*Ethicon, Inc. v. Randall*, No. 3:20-CV-13524, 2021 WL 2206106  (D.N.J. May 28, 2021) ......................................................................................................................17

*FDIC v. Wentz*, 55 F.3d 905, 907 (3d Cir. 1995) ..................................................10

*Fusari v. Steinberg*, 419 U.S. 379 (1975) ..............................................................3

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992) ..............................15

*In re Revel AC*, 802 F.3d 558 (3d Cir. 2015) ................................................. *passim*

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ......................................................15

*Nken v. Holder*, 556 U.S. 418 (2010) ....................................................................9

*Rivera v. Patino*, 524 F. Supp. 136 (N.D. Cal. 1981) ..........................................11

*United States v. Westinghouse Elec. Corp.*, 638 F.2d 570 (3d Cir. 1980) ............10

**Federal Statutes**

8 U.S.C. § 1225(d) ................................................................................................14

8 U.S.C. § 1225(d)(4)(A) ................................................................ 6, 8, 9

42 U.S.C. § 1320b-7(a) ...................................................................3

8 U.S.C. § 1324a(b) ......................................................................17

**Federal Regulations**

8 C.F.R. § 274a.2 .........................................................................17

20 C.F.R. § 603.1 ........................................................................12

20 C.F.R. § 603.2(j) ......................................................................3

20 C.F.R. § 603.2(k) ......................................................................4

20 C.F.R. § 603.4(a).......................................................................5

20 C.F.R. § 603.4(b) ...................................................................5, 14

20 C.F.R. § 603.4(c).....................................................................14

20 C.F.R. § 603.5 .....................................................................6, 12

20 C.F.R. § 603.5(h) ................................................................ 6, 12, 13

20 C.F.R. § 603.6 ................................................................... 12, 13

20 C.F.R. § 603.7(b) ......................................................................6

**Federal Rules**

U.S. Dep't of Labor, Employment Training Administration, Unemployment Insurance Program Letter No. 34-97 ("UIPL 34-97"), 62 Fed. Reg. 40,118, 40,119 (July 25, 1997) ................................................5

U. S. Dep't of Labor, Employment and Training Administration, Federal-State Unemployment Compensation Program; Confidentiality and Disclosure Of State UC Information, Proposed Rule, 69 Fed. Reg. 50,022, 50,025 (Aug. 12, 2004) ................................................................5

U. S. Dep't of Labor, Employment and Training Administration, Federal-State Unemployment Compensation Program; Confidentiality and Disclosure Of State UC Information, Final Rule, 71 Fed. Reg.

56,830, 56,833, (Sept. 27, 2006)..............................................................2, 5, 13

**Delaware Statues**

19 *Del. C.* § 3301 ...................................................................................4

19 *Del. C.* § 3344 ...................................................................................4

19 *Del. C.* §§ 3359 ..................................................................................4

19 *Del. C.* §§ 3360 ..................................................................................4

**Delaware Rules**

19 Del. Admin. Code §§ 1202 .................................................................13

19 Del. Admin. Code §§ 1202(4.1) ...........................................................4

19 Del. Admin. Code §§ 1202(4.2) ...........................................................4

19 Del. Admin. Code §§ 1202(12.5) ..........................................................6

## <u>INTRODUCTION</u>

The District Court below granted the DOJ's petition to enforce a subpoena issued under the Immigration and Naturalization Act ("INA") demanding confidential data submitted by Delaware employers as part of the administration of the state unemployment insurance program. Exs. 2, 3. Because Delaware is likely to succeed on the merits of its arguments—namely that state confidentiality rules prohibit such disclosures and are not preempted by the INA—and because Delaware would be irreparably harmed by a disclosure of its documents during the pendency of an appeal, this court should stay the District Court's order below. Appellant respectfully requests that the court consider this motion on an orderly and expedited basis.[1]

Delaware law provides comprehensive privacy protections that limit when it may disclose confidential unemployment insurance data submitted by employers in the state. The Federal government has long permitted states like Delaware to enact such rules. Indeed, federal law sets minimum standards for states to maintain the confidentiality of information they collect to administer their unemployment insurance programs, but permits them to enact additional protections. The federal

---

[1] In conjunction with denying Appellant's motion to stay pending appeal on May 8, 2026, the District Court ordered that the Appellant comply with the administrative subpoena at issue in this case within five days, or by May 13, 2026. Exs. 4, 5. The United States has consented to a short administrative stay to permit the case to be briefed and decided in an orderly, but still expedited, fashion.

1

government even expressed concern about the effects of lax confidentiality safeguards on the behavior of employers providing confidential information necessary to administer the program. *See* U. S. Dep't of Labor, Employment and Training Administration, Federal-State Unemployment Compensation Program; Confidentiality and Disclosure Of State UC Information, Final Rule, 71 Fed. Reg. 56,830, 56,833, (Sept. 27, 2006).

Here, the federal government sought to do the very sort of thing that it suggested might harm unemployment insurance systems. The DOJ issued a subpoena to the Delaware Department of Labor ("DDOL") under the Immigration and Naturalization Act ("INA") to compel disclosure of confidential unemployment insurance information for use in immigration enforcement actions. Delaware argued below that this demand would violate its duly enacted state confidentiality provisions, which are not preempted through the INA's unrelated subpoena provision. Delaware also contended that disclosure would dissuade employers from submitting confidential information to the state, thereby jeopardizing the solvency of the unemployment insurance trust, and provided multiple declarations in support of its claim.

The District Court concluded otherwise. It determined that the INA preempted the comprehensive federal-state unemployment insurance data confidentiality regime. It also wholly disregarded evidence that compelled

2

disclosure would threaten the financial viability of Delaware's already-insolvent unemployment insurance trust fund. Delaware filed an appeal in this Court. In the interim, however, a stay of the decision below is urgently needed. Delaware believes it has a substantial likelihood of success on its argument that compliance with the administrative subpoena is prohibited by state law, which is not preempted by the INA, and will suffer irreparable harm that would arise from compelling Delaware to disclose its confidential records to DOJ while the appeal proceeds.

## BACKGROUND

The Social Security Act of 1935 is a "cooperative federal-state program" that establishes the framework for state unemployment insurance systems. *Custin v. Wirths*, 850 F. App'x 147, 150 (3d Cir. 2021) (citing *Cal. Dep't of Human Res. Dev. v. Java*, 402 U.S. 121, 125 (1971)); *see also Fusari v. Steinberg*, 419 U.S. 379, 383, n.4 (1975) ("The Federal Government plays a cooperative role in the implementation of state unemployment compensation programs, bearing the costs of administration of those programs that satisfy federal requirements."). Among other things, federal law requires that states operating social security or unemployment compensation programs have in effect an income and eligibility verification system. 42 U.S.C. § 1320b-7(a). Such a system requires that all employers in a state make "quarterly wage reports." *Id.* § 1320b-7(a)(3); *see also* 20 C.F.R. § 603.2(j) (defining "unemployment compensation information" as including wage reports collected or

3

obtained for determining unemployment compensation monetary eligibility); *id.* § 603.2(k) (explaining that "wage information" in such reports includes wages paid to an individual, their Social Security number, and the name, address, and Federal employer identification number of the employer who paid such wages).

Like many other states, Delaware operates a comprehensive social security and unemployment insurance system under this cooperative federalism scheme to guard against, among other things, the "serious menace" of "involuntary unemployment," which previously fell exclusively "with crushing force upon the unemployed worker and the worker's family." *See* 19 *Del. C.* § 3301. As part of this program, the Delaware Department of Labor ("DDOL") assesses employers for payments they must make to the State Unemployment Compensation Fund. *See* 19 *Del. C.* § 3344. Delaware employers who do not make the required payments are liable for debt to the Unemployment Compensation Fund, as well as penalties and interest. *See* 19 *Del. C.* §§ 3359, 3360. And in compliance with federal eligibility verification requirements, Delaware enacted laws and regulations requiring its employers to ascertain and report each worker's Social Security number in making any report to the DDOL. 19 Del. Admin. Code §§ 1202(4.1), (4.2) (providing that each "employer shall report the worker's Social Security number in making any report required by the Delaware Division of Unemployment Insurance with respect to a worker").

4

Recognizing the sensitivity of data required to be maintained and disclosed as part of the operation and the administration of state unemployment insurance systems, federal regulations require states to adopt confidentiality provisions that safeguard information about any individual or employer, ultimately in order to ensure "full payment of unemployment compensation." 20 C.F.R. § 603.4(a), (b). Indeed, the U.S. Department of Labor has long explained the need for confidentiality in unemployment insurance information as arising because "[a]ny publicity could have disrupting effects on the operations of the State agency and [a]ffect the agency's mission of insuring claimants 'full payment of unemployment compensation when due.'" U.S. Dep't of Labor, Employment Training Administration, Unemployment Insurance Program Letter No. 34-97 ("UIPL 34-97"), 62 Fed. Reg. 40,118, 40,119 (July 25, 1997);[2] *see also* U. S. Dep't of Labor, Employment and Training Administration, Federal-State Unemployment Compensation Program; Confidentiality and Disclosure Of State UC Information, Final Rule, 71 Fed. Reg. 56,830, 56,833 (Sept. 27, 2006) (reiterating that the confidentiality requirement enables states to insure "full payment of unemployment

---

[2] This guidance was referenced in a subsequent rulemaking. *See* U. S. Dep't of Labor, Employment and Training Administration, Federal-State Unemployment Compensation Program; Confidentiality and Disclosure Of State UC Information, Proposed Rule, 69 Fed. Reg. 50,022, 50,025 (Aug. 12, 2004) (stating that UIPL 34-97 set forth the "longstanding" confidentiality requirement which would be reflected in the new rulemaking)

compensation when due" and "is necessary to … encourage employers to provide information necessary for program operations [and] to avoid interference with the administration of the [unemployment compensation] program…"). As such, states are permitted to disclose information only pursuant to specified exceptions to the general confidentiality requirement. 20 C.F.R. § 603.5. These exceptions permit—although they do not require—states to disclose confidential information collected through employers' unemployment insurance wage reports in response to "a court order or to an official with subpoena authority." 20 C.F.R. § 603.5(h); *see also id.* § 603.7(b) (permitting disclosure of confidential unemployment data to officials with subpoena authority without having to file and pursue a motion to quash the subpoena in the first instance).

Delaware, however, adopted stricter confidentiality standards than the federal minimum provides. For example, even where disclosure of confidential information is permissible, Delaware restricts disclosure for purposes other than those related to the administration of unemployment laws, unless such disclosure will not impede the operation of, and is not inconsistent with the purpose of, the Delaware Department of Labor, is not prohibited by applicable federal law, and is authorized in writing by the Delaware Secretary of Labor. 19 Del. Admin. Code § 1202(12.5).

Federal immigration law provides one such source of subpoena authority that is for purposes other than the administration of the unemployment laws.

Specifically, 8 U.S.C. § 1225(d)(4)(A), authorizes issuance of a subpoena for "the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of [the INA]." On April 7, 2025, Department of Homeland Security ("DHS") officials relied on this authority to issue a subpoena to the DDOL, seeking the wage reports that fifteen Delaware businesses filed with DDOL for the third and fourth quarters of 2024. *See* D.I. 4 at 4-5. On June 3, 2025, the U.S. Department of Justice, through the U.S. Attorney's Office for the District of Delaware ("DOJ") sent Secretary of DDOL, LaKresha Moultrie, a copy of the subpoena and a letter stating an intent to file a legal action to enforce the subpoena if DDOL did not comply by June 20, 2025. D.I. 2-2.

DDOL did not comply by the deadline, and DOJ filed its petition to enforce the subpoena. D.I. 2. DDOL filed a response, D.I. 24, arguing that the subpoena was unenforceable on account of being issued for an improperly broad purpose that would violate the INA, and that it was burdensome, lacked adequate factual basis, contravened Delaware confidentiality law, would damage the trust between employers and DDOL, which would pose significant risk to the solvency of the Delaware unemployment program. D.I. 24 at 3. In support, DDOL supplied a declaration from Secretary Moultrie concluding that disclosure of confidential unemployment compensation information would likely have a chilling effect on

7

employers voluntarily filing quarterly wage reports and paying their assessments, which would risk solvency of the unemployment insurance trust fund. *See* D.I. 24 at 26. DDOL also provided a declaration from the Director of the Division of Unemployment Insurance Marie Cameron, who described the precarity of the Delaware Unemployment Insurance Trust Fund. D.I. 24-1. Indeed, Delaware's UI Trust Fund was categorized as below the federal minimum solvency recommended level from 2015 to 2021, and again in 2025. *Id.*

The District Court heard argument on April 1, 2026 and issued a decision granting DOJ's petition to enforce. D.I. 35. The Court concluded that the INA subpoena provision in 8 U.S.C. § 1225(d)(4) provided authority to seek records for the "full range of subjects" covered by the INA and, as such, DOJ's subpoena investigating 15 businesses was issued for a legitimate purpose—namely, a worksite enforcement investigation. D.I. 35 at 9-12. The Court discredited DDOL's evidence that requiring production of these records would interfere with the efficient administration of its unemployment insurance program. It concluded both that employers would have no reason to know their reports would be produced to DHS, and also that they were given notice of the potential for such disclosure when submitting wage reports. *Id.* at 14-16. The Court dismissed the possibility that employers would decline to file wage reports and risk penalties and imprisonment for violating federal and state law. *Id.* at 16. It also minimized Secretary Moultrie's

declaration as "conclusory and unsubstantiated" and declined to contemplate the likelihood that employers failing to submit wage reports would threaten the solvency of Delaware's unemployment insurance trust fund—characterizing it as a "hyperbolic assertion." *Id.* at 17. And the District Court concluded that any of Delaware's confidentiality regulations prohibiting disclosure were preempted by the INA's subpoena provision, 8 U.S.C. § 1225(d)(4)(A). *Id.* at 22.

Delaware immediately appealed, and filed a motion to stay the decision pending appeal in the District Court. D.I. at 38. The district court denied the motion on May 8, 2026. *See* D.I. 44.

## **ARGUMENT**

This Court may grant a stay pending appeal where the applicant "is likely to succeed on the merits" and the equities support a stay. *In re Revel AC*, 802 F.3d 558, 565, 568, 571 (3d Cir. 2015). Specifically, an applicant must first make a "sufficient showing that (a) it can win on the merits … *and* (b) will suffer irreparable harm absent a stay." *Id.* at 571. The applicant's likelihood of success must be "significantly better than negligible" but need "not [be] greater than 50%." *Id.* Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *Id.* at 569 (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2010)). When the Government is the party opposing the stay, as is the case here, these last two factors merge. *Nken*,

9

556 U.S. at 435.

At this next stage, the court "balance[s] the relative harms … using a 'sliding scale' approach." *Revel*, 802 F.3d at 571. In this Circuit, stays pending appeal are regularly granted in administrative subpoena enforcement actions implicating weighty questions of constitutional law. *See United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 573 (3d Cir. 1980) (administrative subpoena implicating substantive due process concerns "was stayed pending disposition of the appeal"); *EEOC v. Franklin & Marshall Coll.*, 775 F.2d 110, 113 (3d Cir. 1985) (noting that district court stayed order compelling compliance with administrative subpoena that raised First Amendment issue); *EEOC v. University of Pa.*, 850 F.2d 969, 974 n.2 (3d Cir. 1988) (staying, pending appeal, order enforcing administrative subpoena implicating First Amendment); *FDIC v. Wentz*, 55 F.3d 905, 907 (3d Cir. 1995) (stating that district court stayed its order enforcing an administrative subpoena involving substantive due process issues pending appeal); *see also EEOC v. University of Pa.*, No. 2:25-cv-06502 (E.D. Pa. Apr. 27, 2026) (granting stay pending appeal of an order granting enforcement of an administrative subpoena based on a showing of irreparable harm despite concluding that the applicant "does not have a strong chance of prevailing on appeal"). Because the same is true here, the Court should grant Delaware's application for a stay pending resolution of the appeal.

# I. THE STATE HAS A SIGNIFICANT LIKELIHOOD OF PREVAILING ON APPEAL.

A. <u>Delaware Law Requiring Confidential Treatment of Unemployment Compensation Information Is Not Preempted.</u>

Delaware has carried its burden on the first factor, which under Third Circuit precedent requires only that it show a "reasonable chance" of success, that "need not be more likely than not;" it must simply be "significantly better than negligible." *Revel*, 802 F.3d at 569-71. That is so because it has made a strong showing that Congress did not intend to preempt Delaware's unemployment insurance confidentiality laws with the general subpoena provisions of the Immigration and Nationality Act (INA). Indeed, statutory and regulatory history suggests the opposite—that Congress specifically encouraged states to enact protective privacy regulations as part of the federal-state partnership to administer social security and unemployment insurance programs, and that it did not intend to preempt those regulations through enactment of the INA's subpoena provision.

The social security and unemployment insurance programs are a system of "cooperative federalism," where "federal law sets forth minimum eligibility requirements, but a state is free to impose stricter requirements." *Rivera v. Patino*, 524 F. Supp. 136, 140 (N.D. Cal. 1981). This is particularly evident in the regulations governing the confidentiality of state unemployment insurance program data. Federal regulations establish minimum requirements concerning the confidentiality and disclosure of unemployment compensation information that

states retain.  *See* 20 C.F.R. § 603.1.  The regulations generally state that disclosure of this information is not permitted, save for limited circumstances.

The regulations provide for mandatory disclosure in narrow circumstances not applicable here.  *See* 20 C.F.R. § 603.6 (involving disclosures necessary for the proper administration of the unemployment compensation program or to specific federal agencies charged with administration of public assistance programs). Otherwise, 20 C.F.R. § 603.5 provides circumstances under which disclosure is permissible, and as relevant here, 20 C.F.R. § 603.5(h) provides that disclosure of "confidential UC information in response to a court order or to an official with subpoena authority is permissible as specified in § 603.7(b)," which, in turn provides at subsection 2, that when "[c]onfidential UC information has been subpoenaed, by a local, State or Federal governmental official, other than a clerk of court on behalf of a litigant, with authority to obtain such information by subpoena under State or Federal law … [t]he State or State UC agency may choose to disclose such confidential UC information to these officials without the actual issuance of a subpoena."[3]

---

[3] Separately, 20 C.F.R. § 603.5 provides additional restrictions on disclosure at subsections (a) through (g). The District Court noted in its decision denying a stay pending appeal that Delaware mistakenly relied on those exceptions in its briefing, but that Delaware subsequently promptly withdrew the argument after the District Court identified the mistake at oral argument.  D.I. 44 at 20-21.

Since then, Delaware has taken the same position that it presents here—that disclosures in response to a subpoena are permissible under federal regulations at 20

Thus, the face of the regulation makes clear that state disclosure of confidential unemployment insurance data to an official with subpoena power is permissible, while making disclosure under other circumstances specified in 20 C.F.R. § 603.6 mandatory. But no provision of the federal regulatory scheme forbids states from enacting their own rules prohibiting disclosures to law enforcement that are otherwise permissible under federal law.

Indeed, in a final rule implementing the confidentiality and disclosure requirements for unemployment insurance compensation information, the U.S. Department of Labor confirmed that its regulations "will serve to enhance confidentiality requirements by making disclosure subject to the minimum requirements of the rule, *while permitting States to provide additional protections*." *See* Final Rule, Federal-State Unemployment Compensation Program (UC); Confidentiality and Disclosure of State UC Information, 71 Fed. Reg. 56,830, 56,831 (Sept. 27, 2006) (emphasis added).

Delaware did just so. It enacted several of its own confidentiality laws, including 19 Del. Admin. Code § 1202, which permits disclosure of unemployment compensation information to federal government agencies for purposes other than those related to administration of the unemployment laws, but only provided that

---

C.F.R. § 603.5(h), but that those regulations do nor preempt a state from enacting stricter confidentiality laws. D.I. 38 at 4.

13

such disclosure "will not impede the operation of, and is not inconsistent with the purpose of the Delaware Department of Labor and is not prohibited by applicable federal law regarding the confidentiality of unemployment insurance program data/information, and is authorized in writing in individual cases by the Delaware Secretary of Labor."  Delaware's confidentiality regulations thus illustrate its acceptance of the federal government's invitation to maintain a more protective data privacy regime.[4]

Nothing in the Immigration and Nationality Act (INA), including its subpoena provision, 8 U.S.C. § 1225(d), indicates, expressly or impliedly, an intent to interfere with the social security and unemployment insurance system.  Indeed, other sections of the INA confer authority on the Department of Homeland Security (DHS) to seek records similar to the kinds maintained by the state social security and unemployment insurance program.  At minimum, this is a weighty question of first

---

[4] In its decision denying a stay pending appeal, the District Court characterized Delaware as taking the novel position that federal law "mandates" it to pass "stricter UC confidentiality laws," citing to the reply brief filed in support of a stay pending appeal.  D.I. 44 at 10, 19 (citing D.I. 41 at 2).  But there, Delaware's very own characterization of its argument was "that federal law *invited* states to enact the type of strict confidentiality laws that Delaware passed."  D.I. 41 at 2 (emphasis added).  And in a parenthetical, Delaware described federal regulations as "manda[ting]" state confidentiality laws, in the context of describing 20 C.F.R. § 603.4(c) and (b), which employ commanding language when generally instructing that "State law must contain provisions" … "for maintaining the confidentiality of any UC information."  The entirety of the discussion shows that Delaware did not contend that it was required to enact confidentiality provisions that were stricter than the federal minimum requirements, but rather, that it was invited and permitted to do so.

impression in this Circuit, on which Respondent has made a showing that it has at least a "substantial" case on appeal. *Revel*, 802 F.3d at 571.

In its decision denying a stay pending appeal, the District Court contended that the issue is one of conflict preemption—not field preemption. D.I. 44 at 5-8. But even the Supreme Court has noted that these categories of preemption are not "rigidly distinct." *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 n.6 (2000). And in any event, a court's "ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992); *see also Eng. v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990) ("Preemption fundamentally is a question of congressional intent …"). Courts "must discern congressional intent from the language of the allegedly preemptive provision *and the statutory framework surrounding it*." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (emphasis added). The fact that Congress explicitly provided a mechanism within the INA for DHS to obtain the kind of employee information that may be relevant to its immigration investigations—but which states like Delaware safeguard—strongly undermines the notion that state laws in such wide-ranging fields as unemployment insurance administration would pose a conflict with the purposes of the INA. Rather, the fact that Congress made available in the INA an alternative mechanism to obtain information—and that too, one that does not

15

interfere with State law—weighs in favor of concluding that it consciously did *not* intend for state unemployment compensation insurance privacy laws to be seen as in conflict with the INA's subpoena provision.

Ultimately, the independent federal statutory pathway available to DHS to gather I-9 data provides additional support for the notion that Delaware is substantially likely to prevail on the merits of its Supremacy Clause argument. At the very least, this is a colorable question of first impression in this Circuit—not a "baseless legal" argument. D.I. 44 at 24. A stay is therefore warranted.

## II. THE EQUITIES COMPEL A STAY.

### A. Appellant Will Suffer Irreparable Injury Absent A Stay

Delaware would be irreparably harmed if it were compelled to disclose sensitive information in violation of its own laws. Once such information sought is turned over, there would be no remedy that could be provided through an appeal. After all, "disclosure is a bell that cannot be unrung." *See Chao v. Cmty. Trust Co.*, 474 F.3d 75, 87 (3d Cir. 2007); *see also EEOC v. Univ. of Pa.*, No. 2:25-cv-06502 at 11 (acknowledging that even an order requiring the government to destroy information disclosed pursuant to an administrative subpoena "would not prevent or fully rectify the initial disclosure of the information"); *Ethicon, Inc. v. Randall*, No. 3:20-CV-13524, 2021 WL 2206106, at *26 (D.N.J. May 28, 2021) (reasoning that an "imminent possibility of disclosure of confidential information is sufficient to

16

support a finding of irreparable harm").

B.   A Stay Would Not Substantially Harm Appellant, And Would Further the Public Interest By Preserving the Confidential Information of Third Parties Pending Appeal

The Government will not be significantly harmed by the modest delay imposed by a stay. For one, it could obtain the information it seeks through the specific INA provisions and accompanying regulations governing the retention of I-9 verification records. *See* 8 U.S.C. § 1324a(b); 8 C.F.R. § 274a.2. As such, a stay will have no material impact on its ability to conduct the investigation it seeks to undertake—should it choose to utilize the tools available to it.

The public interest also weighs in favor of granting a stay. This factor "balances the benefits and harms to the public," considering the "consequences beyond the immediate parties." *Revel*, 802 F.3d at 569, 572. Permitting this Court to assess the merits of the case without altering the status quo will ensure that it can appropriately resolve the relevant privacy, federalism, and policy questions of first impression in a manner that safeguards the public interest. The District Court found that the public interest factors weigh against Delaware on account of advancing arguments "devoid of even colorable merit." D.I. 44 at 19. As discussed, however, Delaware advances a question of first impression about the intersection between the INA and state unemployment confidentiality laws, which the public has an interest in resolving on appeal. As such, this factor tips in favor of a stay.

17

# CONCLUSION

For the reasons set forth above, this Court should grant a stay pending full resolution of the merits.

Respectfully submitted.

/s/ Jennifer Kate Aaronson

Jennifer Kate Aaronson
Ian Liston
Deputy Attorneys General

Dated: May 8, 2026

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 27(d) and L.A.R. 31.1(c), I certify that:

1.      This  motion complies with the type limitations of Fed. R. App. P. 27(d)(2)(A) because the brief contains 4,083 words, excluding the parts of the brief exempted by Fed R. App. P. 32(f), and thus does not exceed the 5,200-word limit.

2.       This brief complies with the typeface requirements of Fed R. App.  P. 32(a)(5) and the type-style requirements of  Fed R. App.  P. 32(a)(6)because the brief has been prepared in a proportionally spaced typeface using the Microsoft Word word-processing system in Times New Roman that is at least 14 points.

3.      This brief complies with L.A.R. 31.1(c) in that prior to being electronically submitted, it was scanned by the following virus-detection software and found to be free from computer viruses:

> Company:  CrowdStrike
>
> CrowdStrike Falcon Sensor

Dated: May 8, 2026                                              /s/ Ian Liston
                                                                              Deputy Attorney General

# CERTIFICATION OF BAR MEMBERSHIP

I certify that that I am a member in good standing of the bar of the United

States Court of Appeals for the Third Circuit.


Dated: May 8, 2026                              /s/ Ian Liston
                                                Deputy Attorney Gener