NO. 26-1941

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,
Petitioner-Appellee

v.

DELAWARE DEPARTMENT OF LABOR,
Respondent-Appellant

Appeal from the United States District Court
for the District of Delaware
(Misc. Action No. 25-322-CFC)

Brief of Appellee United States of America
in Opposition to Emergency Motion for Stay Pending Appeal

**Benjamin L. Wallace**
**United States Attorney**

Dylan J. Steinberg
Claudia L. Pare
Assistant United States Attorneys
1313 N. Market Street
P.O. Box 2046
Wilmington, DE 19899-2046
*Attorneys for Petitioner-Appellee*

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................1

BACKGROUND ..................................................................................2

ARGUMENT ......................................................................................3

    I.     DDOL Has Not Established a Likelihood of Success on the Merits ......................................................................6

        A.    Delaware's Unemployment Compensation Confidentiality Provisions Are Preempted to the Extent They Conflict with the INA..............................................6

        B.    The Availability of Other Pathways for DHS to Obtain Similar Information Does Not Undercut the Preemption Analysis ......................................................13

    II.    DDOL Has Not Established That It Will Suffer Irreparable Harm Absent a Stay..........................................................17

    III.   Additional Factors Do Not Support a Stay Here..................19

CONCLUSION ..................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Chao v. Cmty. Trust Co.*,
474 F.3d 75 (3d Cir. 2007)......................................................................17

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ...........................................................................9, 11

*Erie Indem. Co. v. Stephenson*,
157 F.4th 265 (3d Cir. 2025) .................................................................13

*Fla. Lime & Avocado Growers, Inc. v. Paul*,
373 U.S. 132 (1963) ...................................................................9, 10, 15

*Harris v. City of Philadelphia*,
35 F.3d 840 (3d Cir. 1994)....................................................................13

*N.D. ex rel. guardians ad litem v. Hawaii Dep't of Educ.*,
600 F.3d 1104 (9th Cir. 2010) ..............................................................20

*Hilton v. Braunskill*,
481 U.S. 770 (1987) .................................................................................4

*Hines v. Davidowitz*,
312 U.S. 52 (1941) .................................................................................16

*In re Revel AC, Inc.*,
802 F.3d 558 (3d Cir. 2015)...........................................................4, 5, 19

*Maryland v. King*,
567 U.S. 1301 (2012) .............................................................................20

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996) ...............................................................................10

*Nken v. Holder*,
556 U.S. 418 (2009) .................................................................................4

*Ofosu v. McElroy,*
  98 F.3d 694 (2d Cir. 1996).................................................20

*Oregon Prescription Drug Monitoring Program v. DEA,*
  860 F.3d 1228 (9th Cir. 2017) .....................................12

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,*
  461 U.S. 190 (1983) ......................................................16

*Presley v. United States,*
  895 F.3d 1284 ....................................................... 11, 16

*Ruckelshaus v. Monsanto Co.,*
  463 U.S. 1315 (1983) .......................................................4

*S.S. Body Armor I, Inc. v. Carter Ledyard & Milburn LLP,*
  927 F.3d 763 (3d Cir. 2019)......................................5, 6

*Sikkelee v. Precision Airmotive Corp.,*
  822 F.3d 680 (3d Cir. 2016).......................................10

*Singer Mgmt. Consultants, Inc. v. Milgram,*
  650 F.3d 223 (3d Cir. 2011)..........................................4

*Trump v. CASA, Inc.,*
  606 U.S. 831 (2025) ......................................................20

*United States v. Cianfrani,*
  573 F.2d 835 (3d Cir. 1978)...........................................4

*United States v. Supreme Ct. of New Mexico,*
  839 F.3d 888 (10th Cir. 2016) .....................................12

*United States v. Zadeh,*
  820 F.3d 746 (5th Cir. 2016) .................................. 11, 16

## Statutes - Federal

8 U.S.C. § 1225(d)(4)(A).............................................9, 16

8 U.S.C. § 1324a(a)(1).....................................................2

8 U.S.C. § 1324a(b)(3)...............................................................................14

42 U.S.C. § 1320b-7(a)(3) .........................................................................14

**Statues - State**

19 Del. Code. § 3125(a)(4) .........................................................................7

**Regulations**

19 Del. Admin. Code § 1202, ¶ 12.6 ...........................................................7

## INTRODUCTION

Appellant the Delaware Department of Labor ("DDOL") moves for an emergency stay of the District Court's ruling, arguing that this case presents "a weighty question of first impression in this Circuit." ECF No. 7-1[1] ("Stay Motion") at 14–15. It does not. Rather, this case presents an entirely straightforward application of long-standing precedents from this Court and the Supreme Court regarding preemption of state law that conflicts with federal law. The State of Delaware has promulgated a regulation that DDOL contends precludes it from responding to a federal subpoena. Because that state regulation, at least under DDOL's construction of it, directly conflicts with the federal statute authorizing the subpoena at issue in this case, the regulation is preempted. The analysis of that question is neither complex nor novel. Because DDOL's substantive arguments are directly contrary to well-established precedent, DDOL is unlikely to succeed on the merits of its appeal. Likewise, DDOL fails to demonstrate that any of the other stay factors weigh in its favor. This Court should deny DDOL's stay request.

---

[1] This brief uses ECF No. citations to refer to documents filed on the docket before this Court. D.I. citations below refer to documents on the District Court docket.

## BACKGROUND

Since February 2025, Homeland Security Investigations ("HSI"), an agency of the Department of Homeland Security ("DHS"), has been investigating various Delaware businesses to determine whether they are employing undocumented aliens in violation of the Immigration and Nationality Act ("INA"), including 8 U.S.C. § 1324a(a)(1). D.I. 2-1 ¶ 6. As part of its investigation, on April 7, 2025, HSI issued and served Department of Homeland Security Immigration Enforcement Subpoena Number HSI-WM-2025-048065-001 (the "Administrative Subpoena" or the "Subpoena"), which required the production by April 18, 2025, of wage-and-hour reports for the third and fourth quarters of 2024 for fifteen specified Delaware businesses. *Id.* ¶ 19; *see also* D.I. 35 at 3.

DDOL ignored the Administrative Subpoena. D.I. 35 at 4. And on July 31, 2025, the United States petitioned the District Court to enforce the Subpoena. *Id.*

Once the Petition was fully briefed, and following oral argument, the District Court concluded that HSI's investigation had a legitimate purpose, that the Administrative Subpoena sought information relevant

to HSI's investigation, that the government was not already in the possession of the information covered by the Subpoena, that the government had complied with the administrative steps required by statute, and that the Subpoena was not unreasonably broad or burdensome. *Id.* at 8–17. As a result, the Court held that HSI's Administrative Subpoena was valid and enforceable. *Id.* at 23. The Court granted the United States's Petition on April 13, 2026. D.I. 36.

On April 21, 2026, DDOL docketed its Notice of Appeal, D.I. 37, and moved the District Court for a stay of all proceedings pending appeal, D.I. 38. On May 8, 2026, the District Court denied DDOL's motion for stay, finding that DDOL had not "made a strong showing that it is likely to succeed on the merits of its appeal" and likewise had not "demonstrated that it is likely to suffer irreparable harm in the absence of a stay." D.I. 44 at 4. The District Court ordered DDOL to comply with the Administrative Subpoena within five days, *i.e.*, by May 13, 2026. D.I. 45. That same day, DDOL filed its Stay Motion with this Court.

**ARGUMENT**

This Court has characterized the remedy of a stay pending appeal as an "extraordinary" one. *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978); *see also Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1316 (1983) (Blackmun, J., in chambers). The factors governing the issuance of a stay are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The first two factors are "the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

As to the first factor, a strong showing of the likelihood of success exists if there is "a reasonable chance, or probability, of winning." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc). "While it is not enough that the chance of success on the merits be better than negligible, . . . the likelihood of winning on appeal need not be more likely than not." *In re Revel AC, Inc.*, 802 F.3d 558, 569 (3d Cir. 2015) (cleaned up).

To satisfy the second factor, the movant must demonstrate that irreparable injury is "likely" rather than "merely possible" in the absence of a stay. *Id.* (citation omitted). This Court has described that "likely" in this context means "more apt to occur than not." S.S. *Body Armor I, Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 772 (3d Cir. 2019).

If the movant has satisfied the first two factors, courts then assess the harm to the opposing parties and weigh the public interest. *Id.* "In particular, courts balance the harms by weighing the likely harm to the movant absent a stay, the second factor, against the likely harm to stay opponents if the stay is granted, the third factor." *Id.* "Courts also evaluate where the public interest lies, the fourth factor, which calls for gauging consequences beyond the immediate parties." *Id.* (internal quotation omitted).

This Court has adopted a "sliding-scale" approach to determining how strong a case a stay movant must show. *Id.* "The more likely the movant is to win, the less heavily need the balance of harms weigh in its

favor; the less likely it is to win, the more heavily need the balance of harms weigh in its favor." *Id.* (cleaned up).

As discussed below, DDOL has failed to show that any of these factors counsel in favor of a stay here. Because the state law provisions on which DDOL relies directly conflict with federal law, they are preempted and DDOL cannot establish any likelihood of success on the merits. Likewise, DDOL cannot point to any significant harm that will result in the absence of a stay. Finally, the balance of the equities and the public interest both weigh against the entry of a stay. DDOL's Motion should be denied.

## I. DDOL Has Not Established a Likelihood of Success on the Merits.

### A. Delaware's Unemployment Compensation Confidentiality Provisions Are Preempted to the Extent They Conflict with the INA.

DDOL's substantive argument that it need not comply with the Administrative Subpoena focuses exclusively on a series of state confidentiality regulations promulgated in connection with Delaware's Unemployment Compensation ("UC") program. Stay Motion at 13–14 (citing 19 Del. Admin. Code § 1202). DDOL argues that, under those

regulations, disclosure in response to a federal subpoena is permissible only if that disclosure "will not impede the operation of, and is not inconsistent with the purpose of the Delaware Department of Labor and is not prohibited by applicable federal law regarding the confidentiality of unemployment insurance program data/information, and is authorized in writing in individual cases by the Delaware Secretary of Labor." *Id.* at 14 (quoting 19 Del. Admin. Code § 1202, ¶ 12.5).

As a preliminary matter, it is not clear that the cited state regulation actually prohibits disclosure pursuant to the Administrative Subpoena. The very next paragraph of the regulation provides that disclosure "shall be made" to "governmental agencies" pursuant to 19 Del. Code. § 3125(a)(4). 19 Del. Admin. Code § 1202, ¶ 12.6. Section 3125, in turn, permits disclosure to "officials and employees of governmental agencies in the performance of their official duties." 19 Del. Code. § 3125(a)(4).[2] And it is undisputed that, prior to the issuance

---

[2] Paragraph 12.6 of Section 1202 lists a number of governmental agencies to whom disclosure must be made (including the U.S. Department of Justice and the Internal Revenue Service) without enumerating DHS. But the list of agencies included in paragraph 12.6 is expressly non-exhaustive. *Id.* ("[G]overnmental agencies to whom such disclosure is to

of the Administrative Subpoena, DDOL had historically provided the same sort of information sought by in that subpoena to DHS and to other federal agencies. *See* D.I. 14-4 ("Moultrie Decl.") ¶ 52(b); *see also* D.I. 35 at 14, 25 n.9.[3] That said, even assuming for purposes of argument that the state regulations do preclude disclosure in response to the Administrative Subpoena, such a prohibition would create a clear conflict with federal law, which would result in the preemption of the state regulations, at least to the extent of any such conflict.[4]

To be sure, the question of preemption can be a complex one, particularly where multiple overlapping statutory and regulatory

---

be made shall include, but *is not limited to* the following . . . ." (emphasis added)).

[3] Secretary Moultrie suggested in her declaration that the change in DDOL's behavior was based on her understanding that the Administrative Subpoena was issued in a civil context. Moultrie Decl. ¶ 52(b). But Section 3125(a)(4) only references "official duties" and makes no distinction between civil and criminal investigations. Further, the information sought in the Administrative Subpoena is relevant to both civil and criminal violations. D.I. 34 at 2–3.

[4] In the proceedings before the District Court, DDOL also erroneously relied on federal regulations as a purported basis for its non-compliance. *See* Stay Motion at 12 n.3. DDOL now appears to concede that those federal regulations permit disclosure in response to the Administrative Subpoena and, as a result, appears to be relying solely on the state regulations as the authorization for its non-compliance.

schemes are at play. But within that complexity, one guiding principle is entirely clear: "state law is naturally preempted to the extent of any conflict with a federal statute." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Such a conflict may arise in multiple ways, but among the simplest is "where it is impossible for a private party to comply with both state and federal law." *Id.* In such an impossibility circumstance, "[a] holding of federal exclusion of state law is inescapable and requires no inquiry into congressional design." *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142 (1963). The precedent is thus clear that, where it is impossible to comply with both federal and state law, the conflicting state law is preempted and must yield.

As framed by DDOL, this case provides just such an impossibility conflict. On the one hand, 8 U.S.C. § 1225(d)(4)(A) empowers certain officials to "*require* by subpoena . . . the production of books, papers, and documents . . . concerning any matter which is material and relevant to the enforcement" of the INA (emphasis added). And on the other hand, DDOL takes the position that 19 Del. Admin. Code § 1202 *forbids* the production of wage-and-hour records in response to such a subpoena, absent written authorization from the Secretary of Labor. Where, as

here, such a subpoena has been issued and the Secretary of Labor has refused to provide authorization, compliance with both state and federal law is a "physical impossibility." *Fla. Lime & Avocado Growers*, 373 U.S. at 143. In that circumstance, the Supreme Court has been clear—the state law must give way. *Id.* at 142–43.

In its Motion, DDOL raises abstract concerns about the need to "discern congressional intent from the language of the allegedly preemptive provision and the statutory framework surrounding it." Stay Motion at 15 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (emphasis removed)). But, as noted above, where compliance with both federal and state law is actually impossible, no such searching inquiry into congressional intent is necessary. Instead, in that circumstance, "[a] holding of federal exclusion of state law is inescapable" and no further discernment of congressional intent is required. *Fla. Lime & Avocado Growers*, 373 U.S. at 142.[5]

---

[5] In its argument, DDOL appears to conflate the related but distinct doctrines of field preemption and conflict preemption. *See, e.g.*, *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 687 (3d Cir. 2016) (discussing the distinction between the doctrines). Neither the United States nor the District Court has ever suggested that field preemption applies here, *i.e.*, that Congress has determined that all state law in the UC space is

Because resisting a federal subpoena on state law grounds will nearly always present the sort of impossibility conflict the Supreme Court addressed in *Fla. Lime & Avocado Growers*, it is unsurprising—but nevertheless telling—that DDOL cites to no case in which *any* court has found that a state law that purported to preclude or condition compliance with a federal subpoena was not preempted. To the contrary, when faced with petitions to enforce federal subpoenas despite the strictures of state law, courts have regularly and uniformly found the state law preempted and have enforced the subpoenas at issue. *See, e.g.*, *United States v. Zadeh*, 820 F.3d 746, 752 (5th Cir. 2016) (enforcing a DEA subpoena under the Controlled Substances Act over an objection pursuant to the Texas Occupations Code); *Presley v. United States*, 895 F.3d 1284, 1292 and n.6 (11th Cir. 2018) (enforcing an IRS subpoena over an objection based in the Florida Constitution and declining to conduct a

---

preempted. Indeed, as DDOL discusses, the federal UC scheme expressly permits states to adopt their own regulations. Stay Motion at 5–6. While DDOL is correct that "these categories of preemption are not 'rigidly distinct,'" *id.* at 15 (quoting *Crosby*, 530 U.S. at 373 n.6), DDOL has completely failed to wrestle with the doctrinal and analytical differences and, instead, has relied primarily on field preemption cases in support of its argument against conflict preemption here, *see, e.g.*, D.I. 44 at 4–7.

11

full preemption analysis because the state constitutional provision "would plainly interfere with the IRS's abilities to execute its summons authority and conduct its investigation"); *Oregon Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1236 (9th Cir. 2017) (finding a state statute that imposed a probable-cause requirement on DEA subpoenas was preempted by the Controlled Substances Act); *see also United States v. Supreme Ct. of New Mexico*, 839 F.3d 888, 928 (10th Cir. 2016) (finding a New Mexico rule of professional conduct that imposed heightened standards on federal prosecutors for the issuance of subpoenas to be preempted by federal law).

Finally, it is of no consequence that federal UC law permits states to enact additional confidentiality requirements beyond those that are mandatory under federal law. *See* Stay Motion at 12–13. As noted above, neither the United States nor the District Court has ever suggested that Delaware's confidentiality provisions are in conflict with—or preempted by—federal UC law. But as in the cases cited above, even where a state is expressly permitted to enact additional confidentiality restrictions, it cannot do so in a way that purports to nullify or restrict the application of positive federal law in other areas. As a result, while Delaware is

12

permitted to enact additional restrictions on disclosure—and while those restrictions might apply against requests from state or local law enforcement or private parties—it cannot use state law enactments to impede or limit the ability of federal law enforcement officers to obtain records pursuant to federal law.

## B. The Availability of Other Pathways for DHS to Obtain Similar Information Does Not Undercut the Preemption Analysis.

DDOL also posits that, because DHS can obtain I-9 verification records via a separate provision of the INA, DDOL should not be required to produce wage-and-hour records. Stay Motion at 16, 17. As a preliminary matter, DDOL did not make this argument in the District Court. Accordingly, the argument is forfeited for purposes of appeal. *See, e.g., Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir. 1994) ("This court has consistently held that it will not consider issues that are raised for the first time on appeal."). And a forfeited argument that will not even be considered on appeal cannot form the basis for a likelihood of success on the merits. *See, e.g., Erie Indem. Co. v. Stephenson*, 157 F.4th 265, 276 (3d Cir. 2025) (declining to consider forfeited claim- and issue-

13

preclusion arguments in assessing likelihood of success on the merits in a preliminary injunction appeal).

But even setting the forfeiture issue aside, I-9 verification records are not a substitute for the wage-and-hour records sought by the Administrative Subpoena. I-9 verification is required to be performed only at the time of hiring, 8 U.S.C. § 1324a(a)(1)(B)(i), whereas wage-and-hour reports are required to be submitted every quarter, 42 U.S.C. § 1320b-7(a)(3). Thus, the wage-and-hour records in DDOL's possession will necessarily provide a more current picture of employment at the subject businesses. Further, because employers retain themselves I-9 forms, 8 U.S.C. § 1324a(b)(3), forcing DDOL to resort to such forms would necessarily make the employer aware of the existence of an investigation and would require vastly more resources in that it would require HSI agents to travel in person to each of the 15 business that are the subject of its investigation. Obtaining records from DDOL, by contrast, does not require notifying the employer of the nature or scope of a pending federal investigation and does not require an in-person inspection.[6]

---

[6] There are, of course, numerous other considerations, including officer safety, that might render obtaining of records from DDOL preferable as

The I-9 process that DDOL points to is thus not a mechanism for HSI to obtain the same information it seeks in the Administrative Subpoena. And even if DDOL could show that HSI could obtain identical information via other means, DDOL points to no authority suggesting that it may, through enacting state laws, require federal law enforcement to use one authorized investigative technique rather than another in investigating potential violations of federal law.

Nor is there any merit to DDOL's argument that, because Congress determined that DHS could obtain some information that would be available via wage-and-hour records via an alternative procedure, it must not have intended to preempt state unemployment compensation privacy laws. Stay Motion at 16. First, as noted above, where compliance with both federal and state law is impossible, no inquiry into congressional intent is required in a preemption analysis. *See supra* at 9–10, citing *Fla. Lime & Avocado Growers*, 373 U.S. at 142. Further, Congress is not required to identify and address every conceivable state law that might be preempted by its enactments. Rather, even without Congress's

an investigative technique to demanding their production for inspection directly from the employer.

15

explicit intent, state law is preempted where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Just as Congress need not have expressly intended to preempt the Texas Occupations Code when it passed the Controlled Substances Act, *see Zadeh*, 820 F.3d at 752, or intended to preempt the Florida Constitution when it provided the IRS with subpoena power, *see Presley*, 895 F.3d at 1292, it need not specifically have assessed the impact on state unemployment compensation schemes when it provided DHS with the authority to subpoena records "concerning any matter which is material and relevant to the enforcement of" the INA, 8 U.S.C. § 1225(d)(4)(A).

<p align="center">* * *</p>

For all of these reasons, DDOL has failed to show a sufficient likelihood of success on the merits. Rather, for all of the reasons discussed by the District Court in both its merits opinion, D.I. 35, and its denial of DDOL's stay request, D.I. 44, it is clear that any provisions of

<p align="center">16</p>

Delaware law that purport to preclude or limit DDOL's compliance with the Administrative Subpoena are preempted.

## II. DDOL Has Not Established That It Will Suffer Irreparable Harm Absent a Stay.

Although DDOL is at pains to point out that a stay may be granted based on irreparable harm even where the appellant does not have a strong chance of succeeding on the merits, Stay Motion at 10 (citing *EEOC v. University of Pa.*, No. 2:25-cv-06502 (E.D. Pa. Apr. 27, 2026)), it then devotes only a single paragraph to addressing its contention that it will suffer irreparable injury absent a stay, *id.* at 16. In the end, the entirety of its irreparable harm argument comes down to a contention that, once disclosed, the documents cannot be retrieved because "disclosure is a bell that cannot be unrung." *Id.* (quoting *Chao v. Cmty. Trust Co.*, 474 F.3d 75, 87 (3d Cir. 2007)). But *every* appellant who challenges a subpoena can argue that, if it is forced to disclose the documents at issue, that disclosure can never be undone. And so, DDOL is left to effectively argue that a party challenging subpoena enforcement—or, indeed, any form of disclosure order—is *per se* entitled to a stay. This Court has never suggested that the extraordinary remedy

of a stay pending appeal is available so broadly, and it should not do so here.

In addition, DDOL's own merits arguments undermine its already weak claims of irreparable harm. DDOL has argued that DHS can obtain equivalent information from other sources, including the review of I-9 forms. Stay Motion at 16, 17.[7] Tellingly, DDOL does not explain why, if that were true, it would be irreparably harmed by having to provide that same information to DHS itself. In essence, DDOL argues that it is irreparably harmed by having to provide to DHS information that DHS could gain access to by other means. It is difficult to comprehend how this could be so, particularly because the information sought is information neither generated by nor relevant to DDOL itself. Rather, DDOL is simply the custodian of information provided by and about Delaware employers and employees.

---

[7] As discussed above, there are numerous reasons why the information obtainable through an I-9 review process might be less valuable than the information contained in wage-and-hour reports and why HSI might choose to seek that information from DDOL rather than from the employers under investigation.

Finally, DDOL's irreparable harm argument is derivative of its argument on the merits. The only direct harm that DDOL identifies is harm that it alleges it would suffer "if it were compelled to disclose sensitive information in violation of its own laws." Stay Motion at 16. But, as discussed above, those laws are in conflict with—and, as a result, preempted by—federal law. Delaware cannot pass a law that frustrates the purpose of a federal statute and then claim irreparable harm when it is unable to comply with that preempted law. Nor can it argue that it should receive the benefit of a stay on the basis of irreparable harm despite weakness in its arguments on the merits. Here, the very same weakness that undermines its likelihood of success on the merits also undermines its claims of irreparable harm.

## III. Additional Factors Do Not Support a Stay Here.

Because DDOL has failed to make an appropriate showing on either of the first two stay factors, inquiry into additional factors "is unnecessary, and the stay should be denied without further analysis." *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015) (internal quotation omitted). Nevertheless, the United States will briefly address those factors here.

DDOL suggests that the United States "will not be significantly harmed by the modest delay imposed by a stay." Stay Motion at 17. But the Administrative Subpoena was issued on April 18, 2025. Although, for the reasons discussed above, it lacked any valid basis to do so, DDOL has now delayed for more than a year its production of documents that HSI seeks to further its investigation of potential violations of federal law. As the Supreme Court has recognized, when the government "is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). DDOL has already frustrated HSI's investigation for more than a year. Its contention that, even if it were permitted to continue to do so for the duration of its appeal, the United States would suffer no significant injury is without merit.

Neither is there merit to DDOL's contention that the public interest favors a stay. The public interest, of course, favors compliance with the law. *See, e.g., N.D. ex rel. guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1113 (9th Cir. 2010) (noting that "it is obvious that compliance with the law is in the public interest"); *see also Ofosu v.*

20

*McElroy*, 98 F.3d 694, 702 (2d Cir. 1996) (noting the "strong public interest in compliance with the immigration laws by aliens who seek the protection of those laws").  Thus, the public interest favors permitting HSI to proceed with its investigation into potential violations of the INA and, as a result, weighs against a stay here.

## CONCLUSION

For all the reasons stated above, the government respectfully requests that this Court deny DDOL's Stay Motion.

<div style="margin-left:40%">

Respectfully submitted,

Benjamin L. Wallace
United States Attorney

*/s/ Dylan J. Steinberg*
Dylan J. Steinberg
Claudia L. Pare
Assistant United States Attorneys
1313 N. Market Street
P.O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277
*Attorneys for Appellee United States of America*

</div>

Date: May 19, 2026

<p style="text-align:center">**COMBINED CERTIFICATIONS**</p>

1. **CERTIFICATE OF BAR MEMBERSHIP**

    The undersigned is a member in good standing of the bar of this Court.

2. **CERTIFICATE OF WORD COUNT**

    This brief contains 4,202 words, exclusive of tables, certifications and addenda, and is therefore within the word limit for a response to a motion.

3. **CERTIFICATE OF SERVICE**

    I hereby certify that this brief has been served on the Filing Users identified below through the Electronic Case Filing System:

    > Jennifer Kate Aaronson
    > Ian Liston
    > Delaware Department of Justice
    > 820 North French Street
    > Wilmington, DE 19801

4. **CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEF**

    The PDF electronic copy of this brief and the hard copies of this brief are identical.

5. **CERTIFICATE OF VIRUS CHECK**

A virus check was performed on this brief using Trellix Endpoint Security.

<div style="text-align: right;">

*/s/ Dylan J. Steinberg*
Dylan J. Steinberg
Assistant United States Attorney
1313 N. Market Street
P.O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277

*Attorney for Appellee United States of America*

</div>

Date: May 19, 2026